Filed 11/2/22  P. v. Ramirez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MAURO RAMIREZ,<br><br>    Defendant and Appellant. | G060355<br><br>(Super. Ct. No. 06CF3739)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Greg L. Prickett, Judge.  Reversed and remanded for further proceedings.

Raymond M. DiGuiseppe, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Daniel Rogers, Assistant Attorney General, Eric A. Swenson, Alan L. Amann, and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

In 2011, defendant Mauro Ramirez was convicted of murder, attempted murder, and active participation in a street gang. These charges arose from a drive-by shooting that resulted in the death of one victim and the shooting of another. The jury found true two special circumstances relating to the shootings as well as a street gang enhancement and a vicarious use of a firearm enhancement. On direct appeal, we affirmed the judgment with unrelated modifications. (*People v. Ramirez* (Sept. 28, 2012, G045434) [nonpub. opn.] (*Ramirez*).)

On January 21, 2020, defendant filed a petition for resentencing in superior court pursuant to Penal Code[1] section 1172.6 (former § 1170.95).[2] He was appointed counsel, and following briefing, the trial court summarily denied the petition. The Attorney General argues this was correct, because the jury instruction on the special circumstance relating to drive-by shootings included an express intent to kill. We disagree this was sufficient to prove, at the prima facie stage, that defendant aided and abetted the murder rather than a lesser offense. Accordingly, the order is reversed and the matter remanded for further proceedings.

I

FACTS

The facts are set forth in full in our previous opinion. (*Ramirez*, *supra*, G045434.) Suffice to say that in June 2006, defendant, a member of a street gang, was a passenger in a minivan that drove past several members of another gang gathered on a sidewalk. The minivan drove past at first, and then returned. The door of the van opened

---

[1] Subsequent statutory references are to the Penal Code.

[2] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10).

2

and one of the passengers fired five shots at the group on the sidewalk.   Esteban Cuellar was killed and John Kelsey was injured.  (*Ramirez*, *supra*, G045434.)

Defendant and another man were arrested after the other man attempted to stuff a gun in a garbage can.  The gun was the same gun that had been involved in the drive-by shooting.  Defendant admitted being in the minivan on the night of the shootings but denied knowledge of any plan to commit the offenses.  (*Ramirez*, *supra*, G045434.)

Defendant was convicted of murder by means of intentionally discharging a firearm from a motor vehicle with the intent to inflict death as an active participant in a street gang.  (§§ 187, subd. (a), 190.2, subd. (a)(21), (22); count one.)  He was also convicted of premediated and deliberated attempted murder (§§ 664, subd. (a), 187; count two), and street terrorism (§ 186.22, subd. (a); count three).  It was further found true that as to counts one and two, the offenses were committed for the benefit of, at the direction of, and in association with a street gang (§ 186.22, subd. (b)), and that a principal in the crimes intentionally discharged a firearm during their commission (§§ 12022.53, subds. (c), (d), & (e)(1), 1192.7, 667.5).  He was sentenced to life without the possibility of parole, life with the possibility of parole, and 25 years to life plus 20 years.

On January 21, 2020, defendant filed a petition for resentencing on count one[3] pursuant to former section 1170.95.  He alleged that he was eligible for resentencing on count one because he was charged and convicted under a felony murder or natural and probable consequences theory, and he could not now be convicted due to changes in the law.  He requested the appointment of counsel.  The Orange County District Attorney filed a response, as did the Public Defender on behalf of defendant.  On May 21, the court

---

[3] Defendant did not seek resentencing on the attempted murder charge, and he would not have been eligible for such relief when he filed his petition in 2020.  Under recent amendments, however, attempted murder is now included in the types of offenses eligible for relief.  (Sen. Bill No. 775 (2020-2021 Reg. Sess.); Stats. 2021, ch. 551, § 2.)

3

denied the petition, stating "the defendant does not qualify based on the findings made by the jury and the instructions given to the jury." Defendant now appeals.


II

DISCUSSION

*General Principles and Standard of Review*

"An aider and abettor can be held liable for crimes that were intentionally aided and abetted (target offenses); an aider and abettor could also be held liable for any crimes that were not intended but were reasonably foreseeable (nontarget offenses). [Citation.] Liability for intentional, target offenses is known as 'direct' aider and abettor liability; liability for unintentional, nontarget offenses is known as the ""'natural and probable consequences' doctrine.""" (*People v. Pacheco* (2022) 76 Cal.App.5th 118, 123, review granted May 18, 2022, S274102 (*Pacheco*).)

"Effective January 1, 2019, the Legislature passed Senate Bill [No.] 1437 [(2017-2018 Reg. Sess.); Stats. 2018, ch. 1015, §§ 2-4)], 'to amend . . . the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) "Senate Bill No. 1437 . . . substantially modified the law relating to vicarious liability for murder by eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder . . . ." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 11.)

As amended, section 189, subdivision (e), states: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The

4

person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life . . . ."

Although the natural and probable consequences theory is no longer an option to convict an aider and abettor for murder, he or she can still be convicted of murder as a direct aider and abettor. (§§ 188, 189.) To do so, "the prosecution must prove the person who is not the actual killer 'engaged in the requisite acts and had the requisite intent' to aid and abet the target crime of murder. [Citation.] A direct aider and abettor's 'guilt is based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state.'" (*Pacheco*, *supra*, 76 Cal.App.5th at p. 124.)

In addition to changing the substantive law of murder, Senate Bill No. 1437 also created former section 1170.95, which gave those convicted of first or second degree murder the right to petition for resentencing under certain circumstances. Procedurally, there are multiple steps in a petition under former section 1170.95. First, the petitioner must file a declaration that states he or she is eligible for relief. The petition must also include the case number, date of conviction, and state whether the petitioner requests appointment of counsel. (Former § 1170.95, subd. (b)(1)(A)-(C).) If the petition complies with these requirements, the court appoints counsel. (*Lewis*, *supra*, 11 Cal.5th at p. 963.)

The court then evaluates the petition to determine if it makes a prima facie showing that relief is available, and if so, it issues an order to show cause (OSC). (Former § 1170.95, subd. (c).) At the prima facie stage, the bar was "'intentionally and correctly set very low'" (*Lewis*, *supra*, 11 Cal.5th at p. 972), but it is not nonexistent. The

5

court may use the record of conviction to determine if the petitioner is disqualified from relief under the statute as a matter of law. (*Id.* at pp. 970-971.)[4] This prima facie review allows "the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id.* at p. 971.) The court's review, however, "is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980, abrogated on other grounds by *Lewis*, *supra*, 11 Cal.5th at p. 963.) If the court finds the petition meets the prima facie requirements, it issues an OSC and an evidentiary hearing is held after further briefing. (Former § 1170.95, subd. (c).)

We apply the de novo standard of review to the trial court's determination that defendant did not qualify for relief as a matter of law. (*Pacheco*, *supra*, 76 Cal.App.5th at p. 123.)

*The Record of Conviction*

Defendant's record of conviction includes the jury instructions on aiding and abetting. (CALCRIM No. 400.) Further, the jury was instructed: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;

---

[4] Defendant argues that under subsequent amendments to former section 1170.95 (Sen. Bill No. 775 (2020-2021 Reg. Sess.); Stats. 2021, ch. 551, §2), which became effective January 1, 2022, the use of the record of conviction is no longer permitted at the prima facie stage of the inquiry. The changes in language defendant points to, however, apply at the later stage of the inquiry after an OSC has been issued. We reject his contention.

6

[¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he knows of the perpetrator's unlawful purpose and he specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." (CALCRIM No. 401.)

The court also instructed on the natural and probable consequences theory of murder. "Before you may decide whether a defendant is guilty of murder . . . you must decide whether he is guilty of the assault with a firearm. [¶] To prove that the defendant is guilty of murder . . . the People must prove that: [¶] 1. The defendant is guilty of assault with a firearm; [¶] 2. During the commission of the assault with a firearm, a coparticipant in that assault with a firearm committed the crime of murder . . . ; [¶] AND [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of murder . . . was a natural and probable consequence of the commission of assault with a firearm. [¶] . . . [¶] A *natural and probable* consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is a natural and probable [one] consider all the circumstances established by the evidence. If the murder, attempted premeditated and deliberate[d] murder . . . was committed for a reason independent of the common plan to commit assault with a firearm, then the commission of murder, attempted premeditated and deliberate[d] murder . . . was not a natural and probable consequence of assault with a firearm." (CALCRIM No. 403.)

The court also instructed on murder with malice aforethought (CALCRIM No. 520) and degrees of murder (CALCRIM No. 521). With respect to special circumstances, the court instructed on special circumstances generally (CALCRIM No.

7

700), the mental state required (CALCRIM No. 705) and on two special circumstances in particular.

The first was discharge from a vehicle, and read, in relevant part: "The defendant is charged with the special circumstance of committing murder by shooting a firearm from a motor vehicle in violation of Penal Code §190.2(a)(21). [¶] To prove that this special circumstance is true, the People must prove that: [¶] 1. The defendant or the actual shooter shot a firearm from a motor vehicle, killing Estaban Cuellar; [¶] 2. The defendant or the actual shooter intentionally shot at a person who was outside the vehicle; [¶] AND [¶] 3. At the time of the shooting, the defendant intended to kill." (CALCRIM No. 735.) The jury was also instructed on the special circumstance of killing by a street gang member (CALCRIM No. 736).

During closing argument, the prosecutor essentially conceded that defendant was not the shooter. The prosecutor stated that there were several ways the jury could find first degree murder in this case. The first was premeditation and deliberation. Another is if the murder was committed from a vehicle. It "wouldn't have to be premeditated or deliberate[d], so long as it's done from a vehicle."

The prosecutor further stated: "I can prove this murder a variety of ways: That the defendant got in that van and with the intent to go out and hunt and kill somebody from a rival gang, whoever it may be that they might encounter that night. That would be one way. [¶] The other way is, he got into the van with the intent to — what? To do a shooting. Not — maybe not to kill anybody, but they're going to go out and they're going to fire some rounds at somebody that night. What are they going to do it with? They're going to do it with the gun that the defendant is caught with about two weeks later."

8

The prosecutor also argued the natural and probable consequences theory. "If we can prove that he's guilty of one crime such as assault with a firearm, that he and other people agreed to go do that crime, they're aiding and abetting one another in doing that crime. And if one of them commits another crime which is a natural and probable consequence of crime one, guess who would be legally responsible for that other crime: the defendant." Under the circumstances, the prosecutor continued, "a reasonable person in the defendant's position would have known that the commission of murder was a natural and probable consequence of the commission of assault with a firearm."

This theory, the prosecutor argued, "comes into play in situations where you have gang members together and they've agreed to go commit one crime, usually a lesser crime than the greater one, and another crime is committed by one of them, one of their number." The jury, the prosecutor stated, must ask itself "'is that other crime a natural and probable consequence of crime one that he did aid and abet?' [¶] If it is, he's guilty of the other crime."

*Defendant's Petition*

Defendant's petition, which was filed under penalty of perjury, stated: "1. A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] 2a. At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine. [¶] . . . [¶] 3. I could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code § § 188 and 189, effective January 1, 2019."

Accepting the petition as true, as we must, defendant appeared to have met the prima facie requirements of a petition under former section 1170.95. (*Lewis*, *supra*,

9

11 Cal.5th at p. 971.)  The only basis on which the court could deny the issuance of an OSC is if the record of conviction revealed defendant was not entitled to relief as a matter of law.  (*Ibid.*)

The Attorney General argues that defendant was not entitled to relief because the drive-by murder special circumstance was found to be true.  This, the Attorney General argues, required a conclusion that the jury found the defendant had the intent to kill and was therefore ineligible for relief as a matter of law.

"'Except for strict liability offenses, every crime has two components:  (1) an act or omission, sometimes called the actus reus; and (2) a necessary mental state, sometimes called the mens rea.  [Citations.]  This principle applies to aiding and abetting liability as well as direct liability.  An aider and abettor must do something *and* have a certain mental state.'"  (*Pacheco*, *supra*, 76 Cal.App.5th at p. 127.)  "'Thus, proof of [direct] aider and abettor liability requires proof in three distinct areas:  (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus— conduct by the aider and abettor that in fact assists the achievement of the crime.'"  (*Ibid.*)

In *Pacheco*, we considered a similar argument with respect to the gang special circumstance.  In that case, the court instructed the jury:  "'The defendant is charged with the special circumstance of committing murder while an active participant in a criminal street gang . . . .  [¶]  To prove that this special circumstance is true, the People must prove that:  [¶]  1. *A perpetrator* intentionally killed [the victim];  [¶]  2. At the time of the killing, *the defendant* was an active participant in a criminal street gang;  [¶]  3. *The defendant* knew that members of the gang engage in or have engaged in a

10

pattern of criminal gang activity; [¶] 4. The murder was carried out to further the activities of the criminal street gang; [¶] AND [¶] 5. *The defendant had the intent to kill at the time of the killing.*'" (*Pacheco*, *supra*, 76 Cal.App.5th at pp. 127-128.) "[T]he jury's true finding on the gang special circumstance certainly establishes Pacheco intended to kill [the victim] at the time of his killing (the mens rea). But the gang circumstance instruction does not establish—as a matter of law—that Pacheco *directly aided and abetted* the killing of [the victim] (the actus reus). In other words, without weighing the evidence, it is possible Pacheco intended to kill, but he did nothing to directly 'aid, facilitate, promote, encourage, or instigate' the target crime of murder.'" (*Id.* at p. 128.)

"Critical to our analysis is that the court instructed the jurors they could find Pacheco guilty of murder if he aided and abetted one of the three target crimes (assault with a deadly weapon, assault, or disturbing the peace) and the nontarget crime (murder) was a natural and probable consequence of one of the target crimes. [Citation.] Therefore, the jury could have potentially found Pacheco intended to kill [the victim] under the gang special circumstance enhancement (the mens rea), but under the natural and probable consequence theory, Pacheco only actually aided and abetted the nontarget crime of disturbing the peace (the actus reus)." (*Pacheco*, *supra*, 76 Cal.App.5th at p. 128.)

This case is similar. Here, the jury was instructed: "The defendant is charged with the special circumstance of committing murder by shooting a firearm from a motor vehicle in violation of Penal Code §190.2(a)(21). [¶] To prove that this special circumstance is true, the People must prove that: [¶] 1. The defendant or the actual shooter shot a firearm from a motor vehicle, killing Estaban Cuellar; [¶] 2. The defendant or the actual shooter intentionally shot at a person who was outside the vehicle;

11

[¶] AND [¶] 3. At the time of the shooting, the defendant intended to kill." (CALCRIM No. 735.)

As in *Pacheco*, the drive-by murder special circumstance establishes that defendant intended to kill at the time of the shooting but it does not establish that he directly aided and abetted the murder. The jury was instructed that they could find defendant guilty of murder if he aided and abetted the target crime of "assault with a firearm" and the "murder was a natural and probable consequence of" the assault. Therefore, as in *Pacheco*, the jury could have found that defendant intended to kill the victim under the drive-by special circumstance (the mens rea), but aided and abetted the assault with a firearm (the actus rea).

Under the amendments to section 189, subdivision (e), this is insufficient. To find a participant guilty of murder as an aider and abettor, the prosecution must prove the defendant "with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree." (§ 189, subd. (e)(2).) It is not sufficient, under an aiding and abetting theory, to prove the defendant aided and abetted an assault, rather than a murder, with the intent to kill.

Accordingly, at the prima facie stage, the true finding on the drive-by murder special circumstance was not sufficient to prove that defendant both had the necessary intent and engaged in the necessary acts to prove he aided and abetted the murder. (*Pacheco*, *supra*, 76 Cal.App.5th at p. 128.)

The trial court is therefore required to issue the OSC and conduct an evidentiary hearing. "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as

12

amended by the changes to Section 188 or 189 made effective January 1, 2019."
(§ 1172.6, subd. (d)(3).)

## III

## DISPOSITION

The order is reversed and the matter remanded for further proceedings.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.